SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
TANIA M. MOYRON (Bar No. 235736)
tania.moyron@dentons.com
NICHOLAS A. KOFFROTH (Bar No. 287854)
nick.koffroth@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Tel: (213) 623-9300 / Fax: (213) 623-9924

JOSEPH L. STEINFELD, JR.
jsteinfeld@askllp.com
BRIGETTE MCGRATH
bmcgrath@askllp.com
ASK LLP, 2600 Eagan Woods Drive
Suite 400, St. Paul, MN 55121
Tel: (651) 406-9665 / Fax: (651) 406-9676

Counsel to Chapter 11 Debtors and
Debtors In Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>VERITY HEALTH SYSTEM OF CALIFORNIA, INC., *et al.*,<br><br>Debtors and Debtors In Possession.<br><br>☒ Affects All Debtors<br>☐ Affects Verity Health System of California, Inc.<br>☐ Affects O'Connor Hospital<br>☐ Affects Saint Louise Regional Hospital<br>☐ Affects St. Francis Medical Center<br>☐ Affects St. Vincent Medical Center<br>☐ Affects Seton Medical Center<br>☐ Affects O'Connor Hospital Foundation<br>☐ Affects Saint Louise Regional Hospital Foundation<br>☐ Affects St. Francis Medical Center of Lynwood Foundation<br>☐ Affects St. Vincent Foundation<br>☐ Affects St. Vincent Dialysis Center, Inc.<br>☐ Affects Seton Medical Center Foundation<br>☐ Affects Verity Business Services<br>☐ Affects Verity Medical Foundation | Lead Case No. 2:18-bk-20151-ER<br><br>Jointly administered with:<br>Case No. 2:18-bk-20162-ER;<br>Case No. 2:18-bk-20163-ER;<br>Case No. 2:18-bk-20164-ER;<br>Case No. 2:18-bk-20165-ER;<br>Case No. 2:18-bk-20167-ER;<br>Case No. 2:18-bk-20168-ER;<br>Case No. 2:18-bk-20169-ER;<br>Case No. 2:18-bk-20171-ER;<br>Case No. 2:18-bk-20172-ER;<br>Case No. 2:18-bk-20173-ER;<br>Case No. 2:18-bk-20175-ER;<br>Case No. 2:18-bk-20176-ER;<br>Case No. 2:18-bk-20178-ER;<br>Case No. 2:18-bk-20179-ER;<br>Case No. 2:18-bk-20180-ER;<br>Case No. 2:18-bk-20181-ER;<br><br>Chapter 11 Cases<br><br>Hon. Ernest M. Robles<br><br>Adversary No. _____. |

- 1 -

115232055\V-1

|   |   |
|---|---|
| ☐ Affects Verity Holdings, LLC<br>☐ Affects De Paul Ventures, LLC<br>☐ Affects De Paul Ventures - San Jose Dialysis, LLC<br><br>Debtors and Debtors In Possession. | **COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 549, AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502** |
| St. Francis Medical Center, St. Vincent Medical Center, Seton Medical Center, and Saint Louise Regional Hospital,<br><br>Plaintiffs,<br><br>v.<br><br>Philips Healthcare Informatics, Inc. dba Philips Healthcare,<br><br>Defendant. |   |

St. Francis Medical Center, St. Vincent Medical Center, Seton Medical Center, and Saint Louise Regional Hospital (collectively, the "Plaintiffs"), four of the debtors in the above-captioned chapter 11 case (each a "Debtor" and, collectively, the "Debtors"), files this complaint (the "Complaint") to avoid and recover preferential transfers against Philips Healthcare Informatics, Inc. dba Philips Healthcare (the "Defendant") and to disallow any claims held by Defendant. In support of this Complaint, Plaintiffs allege upon information and belief that:

**JURISDICTION AND VENUE**

1. This court has subject matter jurisdiction over this adversary proceeding, which arises under title 11, arises in, and relates to a case under title 11, in the United States Bankruptcy Court for the Central District of California (the "Court"), captioned *In re Verity Health System of California, Inc., et al.,*, Case No. 2:18-bk-20151-ER, pursuant to 28 U.S.C. §§ 157 and 1334(b).

2. The statutory and legal predicates for the relief sought herein are sections 502, 547, 549, and 550 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")[1] and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[1] All references to "§" herein are to sections of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* unless otherwise noted.

- 2 -

115232055\V-1

3. This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2). Plaintiffs consent to entry of final orders and judgment by the Court.

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

5. As more fully discussed in the *Declaration Of Richard G. Adcock In Support Of First-Day Motions*,[2] on the Petition Date (defined below), the Debtors operated as a nonprofit health care system in the state of California.

6. Pursuant to §§ 547, 549, 550, 1106, and 1107, Plaintiffs are authorized and have standing to pursue this avoidance action.

7. Upon information and belief, Defendant was, at all relevant times, a vendor or creditor that provided goods and/or services to or for the Debtors. Upon further information and belief, at all relevant times, Defendant's principal place of business is located at 4100 East Third Avenue, Suite 101, Foster City, California 94404.

## PROCEDURAL BACKGROUND

8. On August 31, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under the Bankruptcy Code. The Debtors' chapter 11 cases (the "Debtors' Cases") are being jointly administered. Since the commencement of the Debtors' Cases, the Debtors have been operating their businesses as debtors in possession pursuant to §§ 1107 and 1108.

9. On September 17, 2018, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in the Debtors' Cases. *See* Docket No. 197.

10. On August 14, 2020, the Court entered the *Order Confirming Modified Second Amended Joint Chapter 11 Plan of Liquidation (Dated July 2, 2020) of the Debtors, the Prepetition Secured Creditors, and the Committee*. *See* Docket No. 5504.

---

[2] [Docket No. 8].

115232055\V-1


## FACTUAL BACKGROUND

11. Prior to the Petition Date, the Debtors maintained business relationships with various business entities, through which the Debtors regularly purchased, sold, received, and/or delivered goods and services.

12. As a part of a hospital system, the Debtors regularly purchased goods from various entities including vendors, creditors, suppliers and distributors. The Debtors also regularly paid for services used to facilitate its business.

13. The Debtors' financial difficulties that led to the decision to file petitions for bankruptcy are attributable to a combination of factors, all of which placed significant stress on the Debtors' liquidity position in the months leading up to the Petition Date. These factors included, among other things: (i) the legacy burden of more than a billion dollars of bond debt and unfunded pension liabilities, (ii) an inability to renegotiate collective bargaining agreements or payor contracts, (iii) the continuing need for significant capital expenditures for seismic obligations and gaining infrastructure, (iv) and the general headwinds facing the hospital industry.

14. As of the Petition Date, the Debtors utilized and maintained a cash management system (the "Cash Management System") for the collection, concentration, management, and disbursement of funds in their business.[3] As of the Petition Date, the Cash Management System consisted of lock box accounts, gross revenue accounts, operating accounts, payroll accounts, and other accounts. [See Docket No. 23].

15. Among these bank accounts, the Debtors made disbursements to vendors from accounts ending 6389, 6365, 6384, 6407, 6421, 6426, 6402, 6440, 1597 at Bank of America, N.A. and account ending 9996 at Wells Fargo Bank, N.A. (the "Disbursement Accounts").

---

[3] *See Emergency Motion of Debtors for Authority to: (1) Continue Using Existing Cash Management System, Bank Accounts and Business Forms; (2) Implement Changes to the Cash Management System in the Ordinary Course of Business; (3) Continue Intercompany Transactions; (4) Provide Administrative Expense Priority for PostPetition Intercompany Claims; and (5) Obtain Related Relief* [Docket No. 23].

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

16. During the ninety (90) days before and including the Petition Date, that is between June 2, 2018 and August 31, 2018 (the "Preference Period"), the Debtors continued to operate their business, including the transfer of money, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits or otherwise to various entities.

17. Upon information and belief, during the course of their relationship, the Defendant and Debtors entered into agreements for the purchase of goods and/or services by Debtors from the Defendant, which are evidenced by one or more contracts, purchase orders, invoices, communications and other documents (collectively, the "Agreements"). Upon further information and belief, the Agreements concerned and related to the goods and/or services provided by Defendant to the Debtors. St. Francis Medical Center's payments to the Defendant pursuant to the Agreements during the Preference Period are set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit A. St. Vincent Medical Center's payments to the Defendant pursuant to the Agreements during the Preference Period are set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit B. Seton Medical Center's payments to the Defendant pursuant to the Agreements during the Preference Period are set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit C. Saint Louise Regional Hospital's payments to the Defendant pursuant to the Agreements during the Preference Period are set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit D.

18. Plaintiffs are seeking to avoid all of the transfers of an interest of Debtors' property made by Debtors to Defendant within the Preference Period.

19. St. Francis Medical Center made transfer(s) of an interest of St. Francis Medical Center's property to or for the benefit of Defendant during the Preference Period through payments aggregating not less than the amount set forth on Exhibit A hereto (the "St. Francis Medical Center Transfer(s)").

115232055\V-1

The details of each St. Francis Medical Center Transfer are set forth on Exhibit A attached hereto and incorporated by reference.

20. St. Vincent Medical Center made transfer(s) of an interest of St. Vincent Medical Center's property to or for the benefit of Defendant during the Preference Period through payments aggregating not less than the amount set forth on Exhibit B hereto (the "St. Vincent Medical Center Transfer(s)"). The details of each St. Vincent Medical Center Transfer are set forth on Exhibit B attached hereto and incorporated by reference.

21. Seton Medical Center made transfer(s) of an interest of Seton Medical Center's property to or for the benefit of Defendant during the Preference Period through payments aggregating not less than the amount set forth on Exhibit C hereto (the "Seton Medical Center Transfer(s)"). The details of each Seton Medical Center Transfer are set forth on Exhibit C attached hereto and incorporated by reference.

22. Saint Louise Regional Hospital made transfer(s) of an interest of Saint Louise Regional Hospital's property to or for the benefit of Defendant during the Preference Period through payments aggregating not less than the amount set forth on Exhibit D hereto (the "Saint Louise Regional Hospital Transfer(s)").[4] The details of each Saint Louise Regional Hospital Transfer are set forth on Exhibit D attached hereto and incorporated by reference.

23. Plaintiffs, through counsel, sent a demand (the "Demand") to Defendant, seeking a return of the Transfer(s). The Demand indicated the potential statutory defenses available to Defendant pursuant to § 547(c), and requested that if Defendant had evidence to support any affirmative defenses, it provide this evidence so Plaintiffs could review the same. Plaintiffs also performed their own due diligence evaluation of the reasonably knowable affirmative defenses available to Defendant.

---

[4] Collectively, the St. Francis Medical Center Transfers, the St. Vincent Medical Center Transfers, the Seton Medical Center Transfers, and the Saint Louise Regional Hospital Transfers will be referred to as the "Transfers."

24. Based upon Plaintiffs' review of the information, if any, provided by Defendant prior to filing this Complaint, and after performing their own due diligence evaluation of the reasonably knowable affirmative defenses to avoidance of the Transfer(s), Plaintiffs have determined that they may avoid some or all of the Transfers even after taking into account Defendant's alleged affirmative defenses.

25. During the course of this proceeding, Plaintiffs may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period. It is Plaintiffs' intention to avoid and recover all preferential transfers of property made by the Debtors to or for the benefit of Defendant or any other transferee. Plaintiffs reserve their right to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action, if applicable (collectively, the "Amendments"), that may become known to Plaintiffs at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## FIRST CLAIM FOR RELIEF

**(Avoidance of Preference Period Transfers from St. Francis Medical Center – 11 U.S.C. § 547)**

26. Plaintiffs incorporate all preceding paragraphs as if fully re-alleged herein.

27. During the Preference Period, St. Francis Medical Center made the St. Francis Medical Center Transfers to or for the benefit of Defendant in an aggregate amount not less than the amount set forth on Exhibit A hereto.

28. Each St. Francis Medical Center Transfer was made from the Disbursement Accounts described *supra,* and constituted transfers of an interest in property of St. Francis Medical Center.

29. Defendant was a creditor of St. Francis Medical Center at the time of each St. Francis Medical Center Transfer by virtue of supplying goods and/or services identified in this Complaint and

- 7 -

115232055\V-1

in the Agreements to St. Francis Medical Center, as more fully set forth on Exhibit A hereto, for which St. Francis Medical Center was obligated to pay following delivery in accordance with the Agreements. *See* Exhibit A.

30. Each St. Francis Medical Center Transfer was to or for the benefit of a creditor within the meaning of § 547(b)(1) because each St. Francis Medical Center Transfer either reduced or fully satisfied a debt or debts then owed by St. Francis Medical Center to Defendant. *See* Exhibit A.

31. Each St. Francis Medical Center Transfer was made for, or on account of, an antecedent debt or debts owed by St. Francis Medical Center to Defendant before such St. Francis Medical Center Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by St. Francis Medical Center. *See* Exhibit A.

32. Each St. Francis Medical Center Transfer was made while St. Francis Medical Center was insolvent. St. Francis Medical Center is entitled to the presumption of insolvency for each St. Francis Medical Center Transfer made during the Preference Period pursuant to § 547(f).

33. Each St. Francis Medical Center Transfer was made during the Preference Period, as set forth on Exhibit A.

34. As a result of each St. Francis Medical Center Transfer, Defendant received more than Defendant would have received if: (i) St. Francis Medical Center's case was under chapter 7 of the Bankruptcy Code; (ii) the St. Francis Medical Center Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by St. Francis Medical Center's schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, St. Francis Medical Center's liabilities exceed its assets to the point that unsecured creditors will not receive a full payout of their claims from St. Francis Medical Center's bankruptcy estate.

35. In accordance with the foregoing, each St. Francis Medical Center Transfer is avoidable pursuant to § 547(b).

115232055\V-1

## SECOND CLAIM FOR RELIEF

**(Avoidance of Preference Period Transfers from St. Vincent Medical Center – 11 U.S.C. § 547)**

36. Plaintiffs incorporate all preceding paragraphs as if fully re-alleged herein.

37. During the Preference Period, St. Vincent Medical Center made the St. Vincent Medical Center Transfers to or for the benefit of Defendant in an aggregate amount not less than the amount set forth on Exhibit B hereto.

38. Each St. Vincent Medical Center Transfer was made from the Disbursement Accounts described *supra,* and constituted transfers of an interest in property of St. Vincent Medical Center.

39. Defendant was a creditor of St. Vincent Medical Center at the time of each St. Vincent Medical Center Transfer by virtue of supplying goods and/or services identified in this Complaint and in the Agreements to St. Vincent Medical Center, as more fully set forth on Exhibit B hereto, for which St. Vincent Medical Center was obligated to pay following delivery in accordance with the Agreements. *See* Exhibit B.

40. Each St. Vincent Medical Center Transfer was to or for the benefit of a creditor within the meaning of § 547(b)(1) because each St. Vincent Medical Center Transfer either reduced or fully satisfied a debt or debts then owed by St. Vincent Medical Center to Defendant. *See* Exhibit B.

41. Each St. Vincent Medical Center Transfer was made for, or on account of, an antecedent debt or debts owed by St. Vincent Medical Center to Defendant before such St. Vincent Medical Center Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by St. Vincent Medical Center. *See* Exhibit B.

42. Each St. Vincent Medical Center Transfer was made while St. Vincent Medical Center was insolvent. St. Vincent Medical Center is entitled to the presumption of insolvency for each St. Vincent Medical Center Transfer made during the Preference Period pursuant to § 547(f).

43. Each St. Vincent Medical Center Transfer was made during the Preference Period, as set forth on Exhibit B.

44. As a result of each St. Vincent Medical Center Transfer, Defendant received more than Defendant would have received if: (i) St. Vincent Medical Center's case was under chapter 7 of the Bankruptcy Code; (ii) the St. Vincent Medical Center Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by St. Vincent Medical Center's schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, St. Vincent Medical Center's liabilities exceed its assets to the point that unsecured creditors will not receive a full payout of their claims from St. Vincent Medical Center's bankruptcy estate.

45. In accordance with the foregoing, each St. Vincent Medical Center Transfer is avoidable pursuant to § 547(b).

### THIRD CLAIM FOR RELIEF

**(Avoidance of Preference Period Transfers from Seton Medical Center – 11 U.S.C. § 547)**

46. Plaintiffs incorporate all preceding paragraphs as if fully re-alleged herein.

47. During the Preference Period, Seton Medical Center made the Seton Medical Center Transfers to or for the benefit of Defendant in an aggregate amount not less than the amount set forth on Exhibit C hereto.

48. Each Seton Medical Center Transfer was made from the Disbursement Accounts described *supra,* and constituted transfers of an interest in property of Seton Medical Center.

49. Defendant was a creditor of Seton Medical Center at the time of each Seton Medical Center Transfer by virtue of supplying goods and/or services identified in this Complaint and in the Agreements to Seton Medical Center, as more fully set forth on Exhibit C hereto, for which Seton Medical Center was obligated to pay following delivery in accordance with the Agreements. *See* Exhibit C.

50. Each Seton Medical Center Transfer was to or for the benefit of a creditor within the meaning of § 547(b)(1) because each Seton Medical Center Transfer either reduced or fully satisfied a debt or debts then owed by Seton Medical Center to Defendant. *See* Exhibit C.

51. Each Seton Medical Center Transfer was made for, or on account of, an antecedent debt or debts owed by Seton Medical Center to Defendant before such Seton Medical Center Transfers were

- 10 -

made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by Seton Medical Center. *See* Exhibit C.

52. Each Seton Medical Center Transfer was made while Seton Medical Center was insolvent. Seton Medical Center is entitled to the presumption of insolvency for each Seton Medical Center Transfer made during the Preference Period pursuant to § 547(f).

53. Each Seton Medical Center Transfer was made during the Preference Period, as set forth on Exhibit C.

54. As a result of each Seton Medical Center Transfer, Defendant received more than Defendant would have received if: (i) Seton Medical Center's case was under chapter 7 of the Bankruptcy Code; (ii) the Seton Medical Center Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by Seton Medical Center's schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, Seton Medical Center's liabilities exceed its assets to the point that unsecured creditors will not receive a full payout of their claims from Seton Medical Center's bankruptcy estate.

55. In accordance with the foregoing, each Seton Medical Center Transfer is avoidable pursuant to § 547(b).

### FOURTH CLAIM FOR RELIEF

**(Avoidance of Preference Period Transfers from Saint Louise Regional Hospital – 11 U.S.C. § 547)**

56. Plaintiffs incorporate all preceding paragraphs as if fully re-alleged herein.

57. During the Preference Period Saint Louise Regional Hospital made the Saint Louise Regional Hospital Transfers to or for the benefit of Defendant in an aggregate amount not less than the amount set forth on Exhibit D hereto.

58. Each Saint Louise Regional Hospital Transfer was made from the Disbursement Accounts described *supra,* and constituted transfers of an interest in property of Saint Louise Regional Hospital.

59. Defendant was a creditor of Saint Louise Regional Hospital at the time of each Saint Louise Regional Hospital Transfer by virtue of supplying goods and/or services identified in this Complaint and in the Agreements to Saint Louise Regional Hospital, as more fully set forth on Exhibit D hereto, for which Saint Louise Regional Hospital was obligated to pay following delivery in accordance with the Agreements. *See* Exhibit D.

60. Each Saint Louise Regional Hospital Transfer was to or for the benefit of a creditor within the meaning of § 547(b)(1) because each Saint Louise Regional Hospital Transfer either reduced or fully satisfied a debt or debts then owed by Saint Louise Regional Hospital to Defendant. See Exhibit D.

61. Each Saint Louise Regional Hospital Transfer was made for, or on account of, an antecedent debt or debts owed by Saint Louise Regional Hospital to Defendant before such Saint Louise Regional Hospital Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by Saint Louise Regional Hospital. *See* Exhibit D.

62. Each Saint Louise Regional Hospital Transfer was made while Saint Louise Regional Hospital was insolvent. Saint Louise Regional Hospital is entitled to the presumption of insolvency for each Saint Louise Regional Hospital Transfer made during the Preference Period pursuant to § 547(f).

63. Each Saint Louise Regional Hospital Transfer was made during the Preference Period, as set forth on Exhibit D.

64. As a result of each Saint Louise Regional Hospital Transfer, Defendant received more than Defendant would have received if: (i) Saint Louise Regional Hospital's case was under chapter 7 of the Bankruptcy Code; (ii) the Saint Louise Regional Hospital Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by Saint Louise Regional Hospital's schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, Saint Louise Regional Hospital's liabilities exceed its assets to the point that unsecured creditors will not receive a full payout of their claims from Saint Louise Regional Hospital's bankruptcy estate.

65. In accordance with the foregoing, each Saint Louise Regional Hospital Transfer is avoidable pursuant to § 547(b).

## FIFTH CLAIM FOR RELIEF

### (Avoidance of Unauthorized Post-Petition Transfers – 11 U.S.C. § 549)

66. Plaintiffs incorporate all preceding paragraphs as if fully re-alleged herein.

67. To the extent any of the Transfer(s) identified on Exhibits A through D cleared the Disbursement Account(s) after the Petition Date and were not authorized by the Court or the Bankruptcy Code (the "Post-Petition Transfers"), Plaintiffs plead that such Post-Petition Transfers are avoidable pursuant to § 549.

## SIXTH CLAIM FOR RELIEF

### (Recovery of Preferential Transfers – 11 U.S.C. § 550)

68. Plaintiffs incorporate all preceding paragraphs as if fully re-alleged herein.

69. Plaintiffs are entitled to avoid the Transfer(s) pursuant to § 547(b) and/or any Post-Petition Transfers pursuant to § 549 (collectively, the "Avoidable Transfers").

70. Defendant was the initial transferee of the Avoidable Transfers or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfers were made.

71. Pursuant to § 550(a), Plaintiffs are entitled to recover the Avoidable Transfers from Defendant, plus interest thereon to the date of payment and the costs of this action.

## SEVENTH CLAIM FOR RELIEF

### (Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))

72. Plaintiffs incorporate all preceding paragraphs as if fully re-alleged herein.

73. Defendant is a transferee of transfers avoidable under §§ 547 and/or 549, which property is recoverable under § 550.

115232055\V-1

74.     Defendant has not paid the amount of the Avoidable Transfers, or turned over such property, for which Defendant is liable under § 550.

75.     Pursuant to § 502(d), any and all Claims of Defendant and/or its assignee, against the Debtors' estate must be disallowed until such time as Defendant pays to the Debtors an amount equal to the aggregate amount of the Avoidable Transfers, plus interest thereon and costs.

76.     Pursuant to § 502(j), any and all Claims of Defendant, and/or its assignee, against the Debtors' estate previously allowed by the Debtors, must be reconsidered and disallowed until such time as Defendant pays to the Debtors an amount equal to the aggregate amount of the Avoidable Transfers.

## **PRAYER**

WHEREFORE, Plaintiffs pray for entry of judgment against Defendant as follows:

1.     On the First, Second, Third, Fourth, Fifth, and Sixth Claims for Relief, judgment in favor of Plaintiffs and against Defendant, avoiding all of the Avoidable Transfers and directing Defendant to return to Plaintiffs the amount of the Avoidable Transfers, pursuant to §§ 547(b), 549, and 550(a), plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

2.     On Plaintiffs' Seventh Claim for Relief, judgment in favor of Plaintiffs and against Defendant disallowing any claims held or filed by Defendant against Plaintiffs until Defendant returns the Avoidable Transfers to Plaintiffs pursuant to § 502(d) and (j); and

3.     For such other and further relief as the Court deems just and proper.

- 14 -

115232055\V-1

DATED: August 28, 2020

    DENTONS US LLP
    Samuel R. Maizel
    Tania M. Moyron
    Nicholas A. Koffroth

    and

    ASK LLP
    Joseph L. Steinfeld, Jr.
    Brigette McGrath

    By:    */s/ Tania M. Moyron*
            TANIA M. MOYRON

    Attorneys for the Chapter 11 Debtors and
    Debtors In Possession

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 15 -

115232055\V-1